UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SPARTAN BUSINESS SOLUTIONS LLC
D/B/A SPARTAN CAPITAL,

                                    *Plaintiff*,

                                                                    23 Civ. 06728 (FPG)

        -- against –

MARQUIS CATTLE COMPANY INC.
D/B/A MARQUIS CATTLE COMPANY;
MONTANA MOUNTAIN BISON, INC.;
MCC TRUCKING LLC;
M HANGING 6 RANCH LLC D/B/A PUMP'T;
MARQUIS CATTLE INC.; and
CORY SHANNON MARQUIS,

                                    *Defendants*.
--------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### &

## IN SUPPORT OF DEFENDANTS' CROSS-MOTION
## TO GIVE RELIEF FROM A REMAND ORDER OR,
## IN THE ALTERNATIVE, A LIMITED DISCOVERY AND A HEARING


Brian Goodwin, Esq.
Goodwin Law Firm
75 South Clinton Square, Suite 510
Rochester, NY 14604
Attorney for Defendants

Defendants Marquis Cattle Company Inc., Montana Mountain Bison, Inc., MCC Trucking LLC, M Hanging 6 Ranch LLC d/b/a Pump't, Marquis Cattle Inc., and Cory Shannon Marquis (together, "Defendants") respectfully submit this memorandum of law in opposition to the motion to remand filed by Plaintiff Spartan Business Solutions LLC d/b/a Spartan Business Capital ("Plaintiff" or "Spartan").  Plaintiff's motion is barred by 28 U.S.C. § 1447(c).

In the alternative, Defendants seek an Order giving them relief "from a final judgment, order, or proceeding" due to the "misrepresentation, or misconduct by an opposing party" under to Rule 60(b)(3) of the Federal Rules of Civil Procedure ("Federal rules") and, if the Court deems it necessary to issuing such an Order, limited discovery and an *in camera* hearing on Plaintiff's Counsel's decision to **<u>not</u>** seek arbitration after Plaintiff's Counsel stated to the Court: "If the Court finds that to be the case and remands the action to state court, ***<u>Plaintiff will file its motion to compel arbitration in state court</u>***."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258).  As Plaintiff's Counsel introduced himself as the ***<u>only</u>*** witness (*i.e.*, his declaration is the only evidence submitted) and the sole reason for the admitted misrepresentation to the Court, Declaration of Steven W. Wells ("Wells Decl.") (ECF No. 4), Plaintiff's Counsel should also be disqualified as a witness.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The Constitution states: "The judicial Power shall extend . . . to Controversies . . . between Citizens of different States. . . ."  U.S. CONST. ART. III, § 2.  One of the first Acts passed by the First Congress was what we refer to as "diversity jurisdiction" -- *i.e.*, giving federal court's original jurisdiction if "the suit is between a citizen of the State where the suit is brought, and a citizen of another state" and over $500.  First Judiciary Act of 1789, § 11, 1 Stat.73 (1789).  Today, the diversity statute states that "district courts shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . ."  28 U.S.C. § 1332(a).

The Diversity Clause of the Constitution and the statute enacted by Congress under this Clause are designed to remedy the wide-spread and long-standing apprehension about the states courts' ability to be impartial when administering justice between citizens of different states.  *See generally* Henry J. Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv. L. Rev. 483, 492 (1928) (citing *Bank of the U.S. v. Deveaux*, 9 U.S. (5 Cranch) 61,87 (U.S. 1809). "Diversity jurisdiction is founded on assurance to non-resident litigants of ***courts free from susceptibility to potential local bias***." *Guaranty Trust Co. v. York*, 326 U.S. 99, 111 (1945) (emphasis added); *see also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 553-54 (2005) ("The Court, nonetheless, has adhered to the complete diversity rule in light of the purpose of the diversity requirement, which is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants.").

Eight months ago, Defendants – all Montana citizens – removed a state court case from Monroe County, New York, to this Court.  Any lawyer familiar with "merchant cash advances" can understand why.  As one federal court has described the "merchant cash advance industry," s "the merchant-to-merchant [is the] equivalent of consumer pay-day lending—an industry allegedly notorious for its predatory practices and extremely high interest rates."  *Fleetwood Servs., LLC v. Complete Bus. Solutions Grp., Inc.*, 374 F. Supp. 3d 361, 366 (E.D. Pa. 2019); *Essex Partners Ltd. v. Merchant Cash & Capital,* No. CV 11-03366 CAS (MRW), 2011 WL 13123326, at *6 (C.D. Cal. Aug. 1, 2011) ("It is apparent that the only purpose of the [merchant cash advance] transactions was to loan money at a usurious rate of interest.").

In the last few years, federal courts – particularly in the Southern District of New York – began to issue critical opinions of companies in the merchant cash industry.  As Judge Analisa Torres wrote just last week, "The industry has come under regulatory scrutiny for the high interest rates charged— some exceeding 500 percent per year—and the 'high-pressure boiler room tactics' of its salespeople". *Collins v. MCA Receivables et al.*, 23 Civ. 00353 (AT), Dkt. 65 at *2 (S.D.N.Y. Jan. 23, 2024).[1]

One lawyer who represents the MCA Companies even wrote an article entitled, *SDNY Is the New Worst Place To Litigate MCA Disputes*, NYLJ (March 10, 2023), after three ground-breaking decisions were issued by federal courts in the summer of 2022.[2]  *See Lateral Recovery LLC v Queen Funding, LLC*, 2022 U.S. Dist. LEXIS 129032 (S.D.N.Y. July 20, 2022); Haymount Urgent Care PC v GoFund Advance, LLC, 2022 US Dist. LEXIS 112768 (S.D.N.Y. June 27, 2022); *Fleetwood Servs., LLC v Ram Capital Funding, LLC*, 2022 US Dist. LEXIS 100837 (S.D.N.Y. June 6, 2022).

Against this backdrop, something extraordinary happened:  MCA Companies began to **flood** the state court in Monroe County with lawsuits.  For example, the Court can take judicial notice that last year (*i.e.*, 2023), Jason Gang, attorney for Plaintiff in this case, filed a total of 439 cases in Monroe County concerning merchant cash advance agreements against companies

---

[1] Available at
https://storage.courtlistener.com/recap/gov.uscourts.nysd.592426/gov.uscourts.nysd.592426.65.0.pdf.

[2] Available at https://www.law.com/newyorklawjournal/2023/03/10/sdny-is-the-new-worst-place-to-litigate-mca-disputes/.

throughout the United States.[3]  In the last month alone, (since January 1, 2024), Mr. Gang filed

38 lawsuits in Monroe County.

      Mr. Gang's office is in Nassau County, on Long Island, New York.[4] According to google

maps, it is 359 mile drive from Mr. Gang's Office to the Monroe County Courthouse or

approximately 6 hours without traffic). Moreover, as alleged in the Notice of Removal:  "Monroe

County has no connection to Plaintiff." ECF No. ¶26.  Plaintiff is a limited liability company that

states under oath in court documents[5] (of which the court may take judicial notice) has a

principal address of 371 East Main St, Suite 2, Middletown, New York 10940 – that is, Orange

County, New York, which is located in the Southern District of New York.

      For Defendants, the litigation of MCA Companies in a New York county with no

connection to the parties and far away from their place of business, and even their lawyer, raises

serious questions and concerns that are difficult to alleviate even with assurances that justice will

be administered in an even-handed manner in state court.  One need not impugned the integrity

of any particular judge or group of judges to understand why an out-of-state Defendant will

always wonder about "potential local bias" of some sort that is driving this behavior by MCA

Companies.  For this reason, Defendants did exactly what the Constitution and every Congress

---

[3] These lawsuits are available via https://iapps.courts.state.ny.us/nyscef/CaseSearch.

[4] *See* https://jasongang.com/contact (last checked January 31, 2024).

[5] "Petitioner, SPARTAN BUSINESS SOLUTIONS, LLC D/B/A SPARTAN CAPITAL
(hereinafter known as "Petitioner") is a New York corporation with a principal address at 371
East Main St, Ste. 2, Middletown, NY 10940." NYSCEF No. 1, Index No. 515925/2023
available at
https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=xziEsuHZIVFGyXAjhoOXPw
==

since 1789 has allowed them to do to avoid having to question the bias of a particular state court:
They removed the case to a federal court – this Court – under docket number 23 Civ. 06258
('258 Action).

Plaintiff moved to remand on the ground that Defendants had not properly alleged
diversity of citizenship in the '258 Action or, in the alternative, to compel arbitration.
Defendants – who are all Montana citizens – argued *inter alia* that they could easily amend the
Notice of Removal to alleged whatever facts the court needed to assure itself of their citizenship
pursuant to 28 U.S.C. § 1653.  Regarding the argument that Plaintiff wanted to arbitrate,
Defendants argued that this stated intent was inconsistent with seeking a remand to state court
and the fact that Plaintiff had not filed a Demand for Arbitration.  However, on reply, Plaintiff's
counsel stated unequivocally:  "If the Court finds that to be the case and remands the action to
state court, ***Plaintiff will file its motion to compel arbitration in state court***. It obviously cannot
file that motion in state court, however, until remand occurs."  ECF No. 1, ¶13 (Notice of
Removal in this Action quoting Plaintiff's Reply Brief in 23 Civ. 06258) (emphasis added).

On November 6, 2023, the Court issued a decision holding:  "Within fourteen (14) days
of the filing of this Decision and Order, Defendants may file an amended notice of removal to
resolve the jurisdictional issue described herein. If Defendants do not do so by this deadline, the
Court will remand this case to the Supreme Court of the State of New York, Monroe County,
without further order." '258 Action, ECF No. 16 at 6.

Having been given the unequivocal and unambiguous statement by Plaintiff's Counsel
that "If the Court . . . remands the action to state court, ***Plaintiff will file its motion to compel
arbitration in state court***," Defendants decided not to file an amended notice of removal.  After
all, Plaintiff had stated that they were only seeking to arbitrate – not to litigate in Monroe

County.  As questions of potential bias of the state court would be removed if the parties were before a neutral third-party arbitrator, Defendants elected not to waste this Court's limited judicial resources by having the Court "take Plaintiff's pending motion to compel arbitration and Defendants' response under advisement."  '258 Action, ECF No. 16 at 6.  The decision to not file an amended notice also had the salutatory result of expediating resolution of the dispute.

But when the case returned to Monroe County, Plaintiff did not file a Demand for Arbitration with Defendants, much less motion to compel arbitration.  To preserve its rights, Defendants did file a demand to change venue because, under CPLR 511, a defendant that believes a plaintiff selected an improper venue must serve a written demand "before the answer is served" or with the answer.  CPLR 511(a).

Defendants did plan on filing an answer with their counterclaims, however, because they were awaiting the demand for arbitration.  The reason not to file is straightforward.  Preparing an answer with counterclaims for state court would have been a significant waste of time and the client's money given that case was going to arbitration.

 "The arbitration process is intended to be informal and inexpensive." Theodore O. Rogers, Jr., *The Procedural Differences Between Litigating in Court and Arbitration*, 16 OHIO ST. J. ON DISP. RESOL. 633, 634 (2000). For example, "[t]here are no pleading requirements in arbitration." Rebecca Callahan, *Five Things Litigators Must Know Before Stepping Into An Arbitration*, ADVOCATE (Sept. 2021). In an arbitration, "pleadings can be short and conclusory, with a one-sentence statement of the claim being sufficient to initiate proceedings." Rogers, *surpa*, 16 OHIO ST. J. ON DISP. RESOL. at 634. "Commercial arbitration [also] generally reflects a strong proclivity to avoid court-like motion practice to refine pleadings or to dismiss a matter

for failure to state a claim properly." GUIDE TO BEST PRACTICES IN COMMERCIAL ARBITRATION at 106 (Curtis E. von Kann et al., eds. 2006).

On December 12, 2024 (just 21 days after the case was remanded), Plaintiff's counsel wrote to Defendants' counsel:  "Your clients' time to respond to the complaint has expired . Please file an answer by Friday to avoid us filing a motion for default judgment."  Goodwin Decl. __.  On December 18, 2024, Plaintiff's counsel – again, the same counsel that stated he would file a motion to compel arbitration in state court – made it clear that he was going to file a motion for summary judgment in state court. Decl. __.

Defendants' counsel in state court immediately responded:

In federal court, you stated in a brief signed by you to the Court:  "If the Court finds that to be the case and remands the action to state court, Plaintiff will file its motion to compel arbitration in state court."

Please file your client's demand tomorrow.  Otherwise, we will file a motion to modify the Order under Federal Rule of Civil Procedure 60(b)(3) for "misrepresentation, or misconduct by an opposing party."

You represented to the Court that this matter would be arbitrated.  It should be arbitrated.

Plaintiff's counsel never responded.  Plaintiff's never stated that he had changed his mind – much less why he had purportedly changed his mind – or otherwise try to explain away the crystal-clear statement he made to this Court:  "If the Court  . . . remands the action to state court, Plaintiff will file its motion to compel arbitration in state court."

Three days later, on December 21, 2023, Defendants initiated this action under docket number 23 Civ. 06728 ('728 Action) removing the action to this Court.  Twenty-nine days later, Plaintiff filed a motion to remand in the closed and terminated action (i.e., '258 Action).  Three days later, and thirty-two (32) days after the removal, Plaintiff filed a Notice of Motion (ECF No. 3) and Plaintiff's Counsel's declaration (ECF No. 4) in this action but no Memorandum of Law.

8

Five days after that, and thirty-seven (37) days after the removal, Plaintiff filed its Memorandum of Law (ECF No. 8) raising only procedural objections but otherwise not contesting that this Court has subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332.  On January 30, 2023, Defendants filed a proposed amended Notice of Motion "[e]ven though the Court's subject matter jurisdiction has not been questioned on the remand motion, out of an abundance of caution and because the Court has an independent duty to assess subject matter jurisdiction." ECF No. 10-1 (Supplement Correspondence to Court).

Defendants now submit this Memorandum of Law in opposition to Plaintiff's motion and in support of their cross-motion.

## II.    SUMMARY OF ARGUMENT

On this motion to remand filed by Plaintiff and cross-motion, there are three issues. *First*, is Plaintiff barred from seeking a remand on procedural grounds after Plaintiff completed filing filed the motion to remand thirty-seven (37) days after removal (even though Plaintiff accidentally filed the motion for remand in another closed action on day twenty-nine (29) after the removal)?  The answer is simple:  Section 1447(c) of Title 28 of the United States Code is strict and does not allow for exceptions.  The motion to remand is barred.

*Second*, even if Plaintiff's motion is not barred by Section 1447(c)'s strict language, should the Court grant Defendants' cross-motion for relief from the Court's previous order to remand because of "misrepresentation, or misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3).  Plaintiff's counsel made a material misrepresentation to the Court.  After Defendants removed the case the first time, counsel stated: "If the Court finds that to be the case and remands the action to state court, ***Plaintiff will file its motion to compel arbitration in state court***."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258).

Plaintiff counsel's only argument is that this Court should not give Defendants relief from prior remand order because counsel did not make the misrepresentation ***with intent to deceive***. *See* Pl. Mem. at 7 ("Plaintiff merely stated that it intended [sic] to move to compel arbitration if the case were remanded.").  While that is obviously ***not*** what Plaintiff's counsel stated to the Court, Plaintiff's counsel's argument is beside the point because Rule 60(b)(3) does not demand proof of nefarious intent.  *See, e.g.*, *United States v. One Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-75 n.6 (11th Cir. 1981) (to avoid redundancy, "misrepresentation" in Rule 60(b)(3) must encompass more than false statements made with the intent to deceive); *Bros, Inc. v. W.E. Grace Manuf. Co.*, 351 F.2d 208, 211 (5th Cir.1965), *cert. denied*, 383 U.S. 936 (1966) (relief on the ground of "other misconduct" can be justified "whether there was evil, innocent or careless, [sic] purpose").

There is no doubt that Plaintiff made a serious misrepresentation.  The intent with which Plaintiff's counsel made this misrepresentation is irrelevant.  Given the serious nature of the misrepresentation, the Court should hold that give relief from the prior remand order.  Such an order would be, to put it mildly, just and proper.

*Third*, if this motion does depend on Plaintiff's counsel's intent and whether he committed fraud on the Court and Defendants, the Court should order limited discovery on the issues raised by his declaration and hold a hearing to determine its veracity.  Under these circumstances, Plaintiff's counsel should also be disqualified because he is a witness – the only witness – for why Plaintiff did not seek to arbitrate after stating:  "If the Court finds that to be the case and remands the action to state court, ***Plaintiff will file its motion to compel arbitration in state court***."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258).

III.     **PLAINTIFF WAIVED ITS OBJECTIONS WITH IT UNTIMELY MOTION TO REMAND**

Thirty-two (32) days after Defendants initiated this action and removed this case from state court (ECF No. 1), Plaintiff filed its Notice of Motion (ECF No. 3) and a Declaration from Steven W. Wells, Counsel for Plaintiff (ECF No. 4).  The Notice of Motion states Plaintiff is "mak[ing] an application pursuant to 28 U.S.C §§ 1332 [*i.e.*, diversity of citizenship providing subject matter jurisdiction to federal courts], 1441, 1446, and 1447 [*i.e.*, Procedure after removal generally], and 9 U.S.C. § 1, *et seq.* [*i.e.*, the Federal Arbitration Act], for an order to remand . . . and for such other and further relief as the Court deems just and proper."[6]  ECF No. 3.  Five days later, and thirty-seven days after removal, Plaintiff filed its Memorandum of Law in Support of Its Motion to Remand (ECF No. 8) ("Pl. Mem.") stating Plaintiff's procedural objections.

Plaintiff's motion to remand is barred; Plaintiff has forfeited the right to raise any procedural objections.  Title 28 of the U.S. Code § 1447(c) provides that a case can be remanded back to state court in two instances—when the federal court does not possess subject matter jurisdiction and when there is a non-jurisdictional removal defect. Although jurisdictional remand can occur until final judgement, Section 1447(c) limits remand due to a non-jurisdictional defect to within a strict thirty days after removal.  *See* 28 U.S.C. § 1447(c).

Defendants have not argued that this Court lacks subject matter jurisdiction.  Rather, Defendants argue:

> Respectfully, the Court should remand this action a second time because (A) Defendants' Second Notice of Removal – filed almost eight (8) months after expiration of the thirty (30) day removal deadline – is untimely, (B) there has been no change in the factual circumstances to warrant a second removal, and (C) Defendants' Rule 60(b) argument is without merit.

---

[6] Plaintiff was given same-day notice of the removal in state court day that that the Notice of Removal was filed (*i.e.*, December 21, 2023).

Pl. Mem. at 4. "Because a district court lacks power to issue a remand order in violation of §
1447(c)," *Council of Laborers v. Pittsburg-Des Moines Steel*, 69 F. 3d 1034, 1038 (9th Cir.
1995), Plaintiff's motion to remand must be denied.

The sole argument that Plaintiff might rely on is that Plaintiff attempted to file the motion
but accidentally filed it in the wrong case.  Twenty-nine (29) days after the case was removed,
Plaintiff filed the motion in a case that had already been closed (or terminated) in the '258
Action.  But Plaintiff would need to make, and the Court would need to accept, the argument that
an equitable exception should be made in this action despite the plain language of the Section
1447(c). Defendants are unaware of any case that has allowed for such an exception.[7]

The Ninth Circuit's decision in *Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir.
1995), demonstrates that the 30-day deadline is strict regardless of the equities of the case.  In
*Pittsburgh-Des Moines Steel Co.*, plaintiff moved to remand based on non-procedural grounds.
*See id.* at 1035-36. In its reply before the trial court, the plaintiff for the first time argued that
remand of the case was proper based on a procedural defect in the removal filing. *Id.* at 1037.
Looking at the text of the Section 1447(c), the court concluded that "the critical date is not when
a motion to remand is filed, but when the moving party asserts a procedural defect as a basis for
remand." *Id.* at 1038.  Thus, even though Plaintiff had filed its motion in a timely manner in that
action, the District Court lacked the statutory authority to order a remand.  *See id.*  In this case,
Plaintiff did not raise its procedural objections in this Action until 37 days after the removal.

---

[7] On January 29, 2024, counsel for Defendants in the state court case, David Kasell, wrote to
counsel for Plaintiff (Mr. Wells), asking for a response to this argument "so as not to burden the
Court should you put forth a compelling argument or controlling opinion."  Plaintiff's counsel
did not respond.

More recently, the Eleventh Circuit reached the same conclusion, holding that non-jurisdictional remands are only available when the motion to remand asserts a procedural defect within thirty days of removal. *See Shipley v. Helping Hands Therapy*, 996 F.3d 1157, 1158 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 861 (2022).  In *Shipley*, Betty R. Shipley (a knee replacement recipient) sued Helping Hands Therapy and a physical therapist for negligence under the Alabama Medical Liability Act in the Circuit Court of Hale County, Alabama. Defendants filed for removal on October 11, 2018. On November 8, 2018, Shipley filed a timely motion to remand asserting subject matter jurisdiction deficiencies.

After Defendants responded to her jurisdictional arguments, Shipley, on December 4, 2018, filed a reply which—for the first time—asserted a procedural defect in the removal process. Shipley argued that Defendants' removal was untimely and, thus, in violation of 28 U.S.C. § 1446 because it occurred more than thirty days after Defendants received the initial pleading and because no new information ever triggered a removal period.  The District Court deemed Shipley's motion to remand timely and granted it.

The Eleventh Circuit reversed.  In addition to finding the remand order reviewable, the Eleventh Circuit held that § 1447(c) only authorized remands for procedural defects when there was a timely motion to remand ***and*** the procedural defect was timely raised within that motion. Shipley had forfeited this objection regardless of the equities or lack of prejudice in the situation. *See id.* at 1161 n.3 (Plaintiff "forfeit[ed]," as opposed to waived, procedural objections because the loss of her ability to assert those objections was involuntary).

The same result should be reached in this case because the statute is clear:  There are no exceptions.  Plaintiff did not file their Notice of Motion in this action until 32 days after the

removal.  Indeed, Plaintiff did not file their Memorandum of Law stating their procedural objections until 37 days after the case was removed (ECF No. 8).

It bears noting that while the plain language of a statute always takes precedence regardless of policy concerns or legislative history, *see, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 US 75, 80 (1998), the legislative intent only supports this interpretation however harsh it may be deemed in a particular case.[8]  By deciding that procedural removal defects must be asserted within thirty days to secure remand, Congress sought to limit possibility of forum changes that stall and litigation. *See In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1410 (11th Cir. 1997) "congressional intent of § 1447(c) was to prevent 'the shuffling [of] cases between state and federal courts after the first thirty days' based on purely procedural defects when each court has subject matter jurisdiction") (quoting *FDIC v. Loyd*, 955 F.2d 316, 322 (1992)); *see also Pittsburg-Des Moines*, 69 F.3d at 1038 (stating that Congress sought to "prevent the shuffling [of] cases between state and federal courts after the first thirty days" (citations and quotation marks omitted).

Plaintiff's motion to remand must be denied because 28 U.S.C. § 1447(c) does not allow for exceptions and courts lack the power to rule on removal defects except for subject matter

---

[8] Of course, a statute barring Plaintiff from asserting procedural defects is not particularly harsh given that it was Plaintiff's choice to wait until the 29th day to file the motion to remand.  Had Plaintiff not waited until the last moment, Plaintiff would have had time to correct the mistake. Moreover, categorical rules always sacrifice precision of result or fairness in a particular situation for administrative ease and equality of result when compared case-by-case discretionary standard.  "There is always a gap between the justification for a rule ... and the rule itself." Cass R. Sunstein, *Problems with Rules*, 83 CALIF. L. REV. 953, 990-91 (1995). Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. CHI. L. REV. 1175, 1177 (1989) ("every rule of law has a few corners that do not quite fit" but strict rules are justified by reasons other than equity or fairness.  This is particularly true when a court interprets a statute as it is not the role of the Court to amend or alter the statute but to merely interpret it.

jurisdiction raised outside of the strict 30-day window provided for by the statute regardless of the equities of the situation.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT THE RULE 60(B)(3) CROSS MOTION

Rule 60(b) the Federal Rules of Civil Procedure provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , *misrepresentation, or other misconduct of an adverse party*; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b)(1)-(3), (6).

Spartan's counsel made a material misrepresentation to the Court.  Counsel stated: "If the Court finds that to be the case and remands the action to state court, ***Plaintiff will file its motion to compel arbitration in state court***. It obviously cannot file that motion in state court, however, until remand occurs."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258) (emphasis added).  However, when the court remanded the action to state court, Plaintiff ***did not*** file a motion to compel arbitration in state court but demanded that Defendants file their answer so that Plaintiff could file a motion for summary judgment in state court.

Spartan's counsel responds, "there was no misrepresentation; Plaintiff merely stated that it ***intended*** to move to compel arbitration if the case were remanded."  Pl. Mem. at 7 (citing Wells Decl. ¶ 11). Of course, any reasonable person can read what Mr. Well's stated to the Court and see that his "intention" is utterly and completely absent from his statement (i.e.,. "If the Court  . . . remands the action to state court, ***Plaintiff will file its motion to compel arbitration in***

***state court***." ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258).  Moreover, a lawyer such as Plaintiff's Counsel is familiar with the distinction between when people say they "will" do something versus they "intend" to do something (an issue the arises in contract law frequently with letters of intent to name just one area of law).

Plaintiff's entire argument, however, is beside the point because courts have repeatedly held that "misrepresentation" or "misconduct" in Rule 60(b)(3) encompasses more than false statements made with intent to deceive; it can cover even accidental misrepresentations.  *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 314 (S.D.N.Y. 2003); *see also United States v. One Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-75 n.6 (11th Cir. 1981).

As Plaintiff's Counsel concedes that he did make a misrepresentation and it was a highly significant misrepresentation that should be the end of the matter regardless of his purported intent.  Plaintiff's Counsel's statement misled the Court and Defendants and his misrepresentation materially affected Plaintiff's decision to not file an amended Notice of Removal and have the Court resolve Plaintiff's pending motion to compel arbitration. Defendants respectfully submit that the Court "relieve [them] from [the] final judgment, order, or proceeding" remanding the case to state court and decide the issue of whether Plaintiff waived the right to arbitrate. Fed. R. Civ. P. 60(b)(3).

## V.   IF DEEMED NECESSARY, THE COURT SHOULD ORDER LIMITED DISCOVERY ON PLAINTIFF'S COUNSEL'S MISREPRESENATION

"It cannot be too often noted that in any context merely saying so does not make it so. It never has." *Putnam v. CarmelCrisp LLC*, 20 Civ. 02074, Dkt. 107 at 7 n.3 (N.D. Ill. Jan. 18, 2024) (numerous citations omitted); *see also Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 779 (2018) (refusing to credit the U.S. Solicitor General's assertions).  Moreover, an attorney's assertions in a motion or brief are not evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6

(1984); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015).  If an attorney's statements are evidence, they are a witness and disqualified as an attorney.

While Plaintiff's Counsel did submit a declaration "under penalty of perjury that the foregoing is true and correct," there are several obvious problems with what Plaintiff's Counsel did submit.  The entirety of Plaintiff's evidence is in paragraph 11, which states in full:

> In their December 21, 2023, Second Notice of Removal, Defendants claimed that Plaintiff engaged in "misrepresentation[] or misconduct" by stating in the First Action that it intended to move to compel arbitration if the case were remanded to State Court. At the time, this statement was accurate. Subsequently, however, I participated in three arbitrations where the fees (attorney's fees, administration fees, and arbitrator fees) were significantly greater than the fees would have been in state court litigation. Moreover, there was little, if any, gain in efficiency; the arbitrations involved the same elements (discovery, motion practice, etc.) as state court. I concluded, therefore, that it would not be in Plaintiff's best interest to arbitrate; rather, it would be cheaper and quicker to litigate in state court. That is why Plaintiff elected to litigate in state court rather than moving to compel arbitration.

ECF No. 4, ¶11.

The vagueness of Plaintiff's Counsel's statement in paragraph 11 raises serious questions. What arbitral forums did he participate *after* June 27, 2023 (when he filed the Reply Brief) wherein the "the fees (attorney's fees, administration fees, and arbitrator fees) were significantly greater than the fees would have been in state court litigation"? *Id.*  There is a significant difference between AAA and JAMS (two common arbitration forums) and the two arbitration forums named in the contracts:  (1) Arbitration Services Inc. and (2) Mediation and Civil Arbitration, Inc. d/b/a RapidRuling, which is also known as "Rapid Ruling."  These are arbitration services *specifically* designed for dispute resolution concerning merchant cash advances.  Rapid Ruling for example "is an online dispute resolution platform. We offer parties to resolve a dispute in weeks instead of months or years with traditional courts and are 100%

online."  https://rapidruling.com/about-us/ (last checked January 31, 2024).[9]  More to the point, Rapid Rules **absolutely does not** impose "the same elements (discovery, motion practice, etc.) as state court," but that is purportedly why Plaintiff's Counsel says he change his mind and decided not to keep his word to the Court and Defendant.

How many arbitrations has Plaintiff's Counsel ever participated in, before what forum, and what where the costs?  Plaintiff's Counsel's sworn statement only makes sense if the last three arbitrations he participated in where dramatically different than the prior arbitrations he participated in and he thought a sea-change in arbitration cost had occurred.  Either that, these are his very first arbitrations and they all occurred in a five-month span.  This too seems unlikely.

Moreover, if Plaintiff's Counsel is not obscuring his true reasons for deciding to litigate once he was in state court, then it means he likely violated Rule 3.3 of the New York State Rules of Professional Conduct, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00.[10]  Rule 3.3 states that a lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *Id.*  Comment [3] to Rule 3.3 also recognizes that there "are circumstances where the failure to make a disclosure is the equivalent of an affirmative misrepresentation." *Id.* Plaintiff's Counsel had a duty to correct his statement to the Court in a signed brief once it became false.

---

[9] It is also well-known that the parties may agree to limit fees paid to the arbitrator and even design their own procedures to reach a just and efficient resolution.  If Plaintiff's Counsel was concerned about the costs of the arbitration, why did he not reach out to any of Defendants' Counsel to state this concern and see if there was a solution?

[10] Avaiable at https://www.nycourts.gov/ad3/AGC/Forms/Rules/Rules%20of%20Professional%20Conduct%2022NYCRR%20Part%201200.pdf

Plaintiff's Counsel's sworn declaration is that on June 27, 2023, "this statement was accurate," ECF No. 4, ¶11, but then he changed his mind due to "three arbitrations."  However, at no point before November 21, 2023 when the Court issued its remand order) did counsel correct his statement that he would no longer arbitrate if the court remanded the case to state court.  The only way Plaintiff's did not violate Rule 3.3 is if the three arbitrations (or at least one) occurred after November 21, 2023 (the Tuesday before Thanksgiving), and December 12, 2023 (a 21-day period with a significant holiday in the middle of it), after which he began emailing that Defendants file an Answer.  The most likely situation is that Plaintiff's Counsel violated Rule 3.3 (which would, respectfully, be misconduct warranting relief from the Order under Federal Rule 60(b)(3)) or he is playing fast-and-loose with the truth.

Because "saying so does not make it so," some discovery is warranted to determine if Plaintiff's Counsel is being truthful.[11] If Plaintiff's Counsel's intent on this motion matters (as Plaintiff's Counsel contends it does as it is the reason he argued Rule 60(b)(3) does not apply), then Court should also hold a fact-finding hearing to determine whether he is being truthful or misrepresenting the reasons behind his decision not to arbitrate once the case was remanded after he had told the Court that "Plaintiff will file its motion to compel arbitration in state court."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258).

Finally, Plaintiff's counsel should be disqualified as he has introduced ***himself*** as the sole witness on his intent when he made the statement.  *See* Rules of Professional Conduct, 22 N.Y.C.R.R. 1200.0, Rule 3.7; *see also S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.*,

---

[11] Are there *any* emails, for example, where Plaintiff's Counsel discusses this issue with other Plaintiff's Counsel, Jason Gang, or the other attorney in his firm, Will Parsons?  One would expect there to be serious discussions about the costs of these "three arbitrations" and the decision to change course if Plaintiff's Counsel is being truthful.  Moreover, on such a critical issue, one would expect Plaintiff's Counsel to exchange emails with his client.

69 N.Y.2d 437, 446 (1987) (disqualification is required where the attorney's testimony is necessary). While federal courts are not bound by the state rules of professional conduct, federal courts do follow them under their inherent power to preserve the integrity of the judicial process. *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process.").

Rule 3.7(a) is designed to alleviate several concerns including the fear that the testifying attorney is distorting the truth as a result of bias in favor of his client. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004) (citations and alterations omitted). This fear undermines the integrity of the judicial process. Such fear is present here as Plaintiff's Counsel may be distorting the truth of the fees incurred. Indeed, Plaintiff's Counsel is distorting the procedures used by the arbitral forums that were agreed to in the contract by stating "the arbitrations involved the same elements (discovery, motion practice, etc.) as state court." Wells Decl. ¶11. That is obviously not true.

Counsel for Defendants wish to emphasize that they do not make this point lightly. Prior to making this motion, Counsel for Defendants wrote to Plaintiff's Counsel to request a stipulation that "Plaintiff will withdraw its counsel's declaration and submit any evidence from Plaintiff as to why Plaintiff elected not to initiated the arbitration." Goodwin Decl. _. Plaintiff's Counsel has elected not to agree to this step and, thus, should be disqualified as his testimony is the only evidence given in support of Plaintiff's motion to remand and to explain why Plaintiff did not seek to arbitrate after stating it would do so to the Court and Defendants.

## VI.    PLAINTIFF'S REMAINING ARGUMENTS ARE MERITLESS

Plaintiff's remaining arguments have no merit.  Plaintiff briefly argues that "second removal is based on the same grounds as the first" and cannot be reviewed pursuant to U.S.C. § 1447(b)(3).  Mem. at 6.  But, obviously, the grounds are different.  Defendants' argument on this motion is that Plaintiff secured a remand by making a misrepresentation to the Court:  "Plaintiff *will file* its motion to compel arbitration in state court."  ECF No. 1, ¶13 (quoting Plaintiff's Reply Brief in 23 Civ. 06258) (emphasis added).  Section 1447(b)(3) does not eliminate the Court's power under Rule 60(b)(3) of the Federal Rules.  If it did, parties could just commit fraud on the court (e.g., defeat complete diversity by lying about their citizenship), secure a remand and the court would be powerless to review it.  This would be an absurd situation.

Plaintiff also seek attorney's fees for the second removal.  This is the equivalent of counsel pounding on the table because the law and facts favor the opposing party's argument (as they do here).  Defendants had "an objectively reasonable basis" for removing this case a second time.  Plaintiff's Counsel made a serious, material misrepresentation to the Court in a signed brief and Defendants relied on that misrepresentation.  The only person that should be required to pay fees is Plaintiff's Counsel.  While Defendants do not seek that remedy, they do respectfully request that the Court hold either the motion to remand is barred by Section 1447(c) or Defendants be given relief from the prior order and the Court determine whether Plaintiff has waived arbitration.

## VII.    CONCLUSION

While it is said that federal courts strictly construe the right to remove, courts "must be equally vigilant in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction." *Hialeah Anesthesia Specialists, LLC v. Coventry*

*Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323, 1327 (S.D. Fla. 2017).  Courts, and officers of the court, must also protect the integrity of the adversarial system from false statements and material misrepresentations.

      For the reasons above, Defendants respectfully submit that Plaintiff's motion to remand is barred by Section 1447(c) or Defendants be given relief from the prior order and the Court determine whether Plaintiff has waived the right to arbitration.[12]

Dated:  Rochester, NY
January 31, 2024

/s/ *Brian Goodwin*
Brian R. Goodwin
Goodwin Law Firm
75 South Clinton Square, Suite 510
Rochester, NY 14604
(585) 353-7084

*Attorney for Defendants*

---

[12] In the event that the Court holds that Plaintiff has not waived the right to arbitrate despite trying to litigate in state court, the remedy would be to issue an order to compel the partis to arbitration.  On this point it is worth emphasizing that the Notice of Motion states Plaintiff is "mak[ing] an application pursuant to . . . 9 U.S.C. § 1, *et seq.* [*i.e.*, the Federal Arbitration Act] . . . for such other and further relief as the Court deems just and proper."[12]  ECF No. 3.  Compelling arbitration, at the very least, is just and proper under these circumstances,